UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **ARNOLD EUGENE FOX, JR.** **REG. # 24886-076** | : | **DOCKET NO. 2:22-cv-05199** **SECTION P** |
| **VERSUS** | : | **JUDGE JAMES D. CAIN** |
| **FEDERAL BUREA OF PRISONS** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 by pro se petitioner Arnold Eugene Fox, Jr. Fox is an inmate in the custody of the Bureau of Prisons ("BOP"), currently incarcerated at the Federal Correctional Institute at Oakdale, Louisiana ("FCIO").

This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of this court. For the reasons stated below, **IT IS RECOMMENDED** that the matter be **DENIED** and **DISMISSED WITH PREJUDICE** under Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts.

**I.**
**BACKGROUND**

Fox is currently serving a 188-month sentence for violation of 18 U.S.C. §§ 2442(b), Use of Cellular Device to Attempt to Persuade, Induce, Entice, Coerce a Minor in Sexual Activity. *See* 2:11-cr-20302-JTF (D. Tenn.), doc. 149. He is currently projected for release on May 12, 2024. *See* Inmate Locator at www.bop.gov. In the original petition, Fox claims that that the BOP has

refused to credit him for approximately 1900 days of programming under the First Step Act, which he asserts entitles him to 936 credits. He seeks a reduction in his sentence, and transfer to prerelease custody.

The Respondents, BOP and Warden Martinez, filed a response to Fox's petition, arguing that he is not entitled to the relief sought for the following reasons: (1) petitioner failed to exhaust his administrative remedies, (2) the court lacks subject matter jurisdiction to review inmate custody designations, (3) petitioner's claim to apply unearned credits is not ripe for review[1], and (4) the BOP has properly applied petitioner's Federal Time Credit. Doc. 14. Petitioner filed a reply to the response (doc. 17), to which the Respondents filed a surreply (doc. 22). A Response to the Respondents' Surreply and a subsequent supplemental pleading (doc. 29) were filed by petitioner (doc. 25), The matter is now ripe for review.

## II.
### LAW & ANALYSIS

### A. *Screening of Habeas Corpus Petitions*

A district court may apply any or all of the rules governing habeas petitions filed under 28 U.S.C. § 2254 to those filed under § 2241. *See* Rule 1(b), Rules Governing § 2254 Cases in the United States District Courts. Rule 4 of the Rules Governing § 2254 Cases authorizes preliminary review of such petitions, and states that they must be summarily dismissed "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." *Id.* at Rule 4. To avoid summary dismissal under Rule 4, the petition must contain factual allegations pointing to a "real possibility of constitutional error." *Id.* at Rule 4, advisory committee note (quoting *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970)). Accordingly, we review the pleadings and exhibits

---

[1] In its Surreply, Respondents withdrew the ripeness argument. Doc. 22, p. 4.

before us to determine whether any right to relief is indicated, or whether the petition must be dismissed.

### B. Law and Application

#### 1. Petitioner failed to exhaust his administrative remedies.

##### a. Law

Pursuant to long-established Fifth Circuit law, "federal prisoners must exhaust 'administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241.'" *Mayberry v. Pettiford*, 74 F. App'x 299, 299 (5th Cir. 2003) (per curiam) (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)). *See also Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993); *United States v. Gabor*, 905 F.2d 76, 78 n.2 (5th Cir. 1990).

Proper exhaustion is required, meaning that the inmate must not only pursue all available avenues of relief but must also comply with all administrative deadlines and procedural rules. *See Woodford v. Ngo*, 126 S.Ct. 368, 378 (2006) (The Court held that proper exhaustion is mandatory under the Prisoner Litigation Reform Act ("PLRA")).

Petitioner was required to exhaust administrative remedies prior to filing his habeas appeal unless extraordinary circumstances exist to prove the process is futile. *See Mayberry*, 74 F. App'x at 299; *Montoya v. Fleming*, 121 F. App'x 35, 36 (5th Cir. 2005), *Anderson v. Fleming*, 79 F. App'x 4 (5th Cir. 2003). The Petitioner bears the burden of showing the futility of exhaustion. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994).

The BOP has established an administrative remedy procedure through which an inmate can seek review of a complaint regarding any aspect of his imprisonment. See 28 C.F.R. §§ 542.10 through 542.19. Before initiating the administrative remedy process, an inmate must first attempt to resolve his complaint informally. 28 C.F.R. § 542.13. "The deadline for completion of informal

resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a).

If an inmate is dissatisfied with the Warden's response to the BP-9, he may submit an Administrative Remedy Appeal (BP-10) to the Regional Director "within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). Generally, the Regional Director has 30 days to respond, with a potential extension of an additional 30 days. *See* 28 C.F.R. § 542.18. If dissatisfied with the Regional Director's response, the inmate may finally file an Administrative Remedy Appeal (BP-11) to the General Counsel in the Central Office of the BOP "within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a). The General Counsel then has 40 days to respond, with the potential extension of an additional 20 days. See 28 C.F.R. § 542.18. This is the final level of administrative appeal.

### b. Application

Petitioner sought administrative remedy by submitting three (3) separate grievances, none of which the Court finds were properly exhausted.

#### i. Administrative Remedy 1115707-A1

Petitioner asserts he first sought administrative remedy in this matter by submitting a grievance to the "Federal Bureau of Prisons Central Office," on March 3, 2022; this administrative remedy was assigned the number "1115707." *See* doc. 1, att. 2, p. 1. He described the issue raised therein as "the fact I have not been given any FSA credits and my release date is quickly approaching." *Id*. As Respondent notes, it is clear from his representations that Petitioner skipped informal resolution, along with the first two levels of formal review. On April 4, 2022, this BP-11 was rejected because it had been filed at the wrong level and should have first been filed at the

institution level. *See id.* at p. 2. The Court is unpersuaded by Petitioner's argument that he was entitled to file directly to the BOP's Office of General Counsel because, as the Respondent argues, Petitioner cannot put every BOP action or failure at the office of the Director simply because he supervises the agency, or because statute vests discretion in the "Director." *See* doc. 22, p. 5, FN 3. Instead, under this provision, if he chose not to follow the standard procedure, he would need to identify which office is responsible for the issue he complains of and submit his request thereto. Petitioner made no attempt to do so, instead he simply filed a "Central Office Administrative Remedy Appeal," also known as a "BP-11," which was then received and processed by the "Administrative Remedy Section" of the Office of General Counsel. *See* Doc. 17, att. 1, p. 2. Because Petitioner skipped the lower levels of administrative review and did not pursue his grievance through the proper procedures as required by the BOP, this BP-11 did not exhaust his available administrative remedies.

### ii. Administrative Remedy 1115136-F1, R1, A1

Petitioner commenced another administrative remedy at the correct level, BP-9, 1115136-F1, which was received by the Warden's office on March 29, 2022. *Id*. at p. 4. Petitioner complained that he had not been awarded FSA Time Credits, claiming he should be eligible for home confinement. On or about April 5, 2022, the Warden issued Plaintiff a response explaining that he was eligible to earn credits, the Designation and Sentence Computation Center (DSCC) would calculate his credits, and he would be notified once his computation was updated. *See id.* at p. 6. Petitioner appealed the Warden's response, claiming that the Warden's response had found him eligible for home confinement under the First Step Act (*it had not*) and complaining that unit team staff had not contacted the DSCC to recalculate his release date, and requesting to have him assigned to home confinement. See *id*. at p. 7. On June 7, 2022, the Regional Director issued a

response to Petitioner informing him that the Bureau of Prisons had begun the process of calculating Federal Time Credits "according to their respective Projected Release Dates." *Id*. at p. 9. Petitioner was informed that his "Unit Team will contact you once the FTC credits have been computed and applied to your sentence." *Id*. Petitioner's appeal (BP-11) was due within 30 days following the issue of the Regional Director's response. See 28 C.F.R. § 542.15(a). However, Petitioner's BP11 was not received until September 2, 2022, well after the time to do so had passed. *See* doc. 14, att. 6, p. 4, Admin Remedy History. On September 12, 2022, the Office of General Counsel rejected his BP-11 as untimely. *See id.*

Attached to his opposition to the Respondents' response, he submitted a page containing his name and address with the handwritten note "delivered by Unit Team 8/10/22, TD" which he submits is a cover page demonstrating that the Regional Director's response was not delivered to him until August 10, 2022. Doc. 17, att. 1, p. 8. However, there is nothing on this document to indicate that it was, in fact, attached to his BP-10: 1115136-R1. Despite his strenuous arguments to the contrary, the Court finds that the evidence submitted by Petitioner fails to demonstrate that the timeliness of his receipt of the BOP's response made it impossible for him to meet the 30-day deadline. Because he submitted this BP-11 after the regulatory deadline, he did not properly exhaust this administrative remedy.[2]

### iii. Administrative Remedy 1119183-F1, R1

Petitioner filed his last grievance, BP-9 (1119183-F1), received by the Warden on May 4, 2022, while his earlier BP-10 (1115136-R1) was still pending. *Id*. at p. 12. This BP-9 sought home confinement under the First Step Act. The Warden denied this BP-9 on May 13, 2022. *Id*. at p. 15. On May 25, 2022, the Regional Director's office received Petitioner's BP-10 (1119183-

---

[2] The Court notes that even if it were to find that Petitioner exhausted this administrative remedies, his petition should be dismissed on the merits, as discussed in detail below.

R1) appealing the Warden's denial. *Id*. at pp. 16-18. Specifically, Fox argued that the BOP policy (Program Statement 7320.01) governing community confinement should not apply to his request for transfer to community confinement because it was written prior to the First Step Act. On July 22, 2022, the Regional Director issued a response, explaining to Petitioner that BOP was still implementing the FSA, and he would be notified once FTCs had been applied. See *id*. at p. 20. However, Petitioner did not appeal to the third and final level. *See* doc. 14, att. 6, p. 4. Instead, he filed this petition on August 31, 2022. Because Petitioner did not appeal within the regulatory deadlines, he did not properly exhaust as required and, because he failed to properly exhaust, his petition should be dismissed.

### 2. *The court lacks subject matter jurisdiction to review inmate custody designations.*

#### a. Law

In determining when an inmate may bring a claim via habeas "the instructive principle" is that "challenges to the fact or duration of confinement are properly brought under habeas, while challenges to the conditions of confinement are properly brought [as civil rights actions]. *Poree v. Collins*, 866 F.3d 235, 243 (5th Cir. 2017). The Fifth Circuit has previously clarified that where the inmate's challenge "affects the timing of his release from custody," it should be brought under habeas. *Carson v. Johnson,* 112 F.3d 818, 820 (5th Cir. 1997). However, "[i]f 'a favorable determination . . . would not automatically entitle [the prisoner] to accelerated release,' the proper vehicle is a [civil rights action]." *Id*. (internal citations omitted).

Furthermore, it is well established that an inmate has no protectable liberty interest in his custodial classification, or in being housed at a particular facility or custody level. *See Olim v. Wakinekona,* 103 S.Ct. 1741, 1748 (1983). The Constitution does not guarantee an inmate will be placed in a prison facility with any particular security classification. See *Meachum v. Fano*, 96

S.Ct. 2432 (1976). The "decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another." *Id*. at 2538. "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 92 S.Ct. 2543, 2547 (1976). "[I]t is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status.'" *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990) (citing *Wilkerson v. Maggio*, 703 F.2d 909, 911 (5th Cir. 1983)).

Importantly, Congress has acted to preclude judicial review of BOP's designation decisions: "Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." 18 U.S.C. § 3621(b)(5). Indeed, "the provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." 18 U.S.C. § 3625 (referring to sections 3621 through 3626). For this reason, BOP's determinations under 18 U.S.C. §§ 3621(b), 3624(g) are unreviewable by the court. *See, e.g., Cook v. Wiley*, 208 F.3d 1314, 1319 (11th Cir. 2000) (applying section 3625 to preclude judicial review of 3621(e) decision).

The First Step Act has not changed this. See, e.g., *Mingo v. Bragg*, 2020 WL 8371203, at *2 (D.S.C. July 28, 2020) ("The First Step Act did not alter the BOP's statutory authority to determine when, or if, [an inmate] is placed in an RRC or on home confinement."). Congress was clear in its grant of discretion: "The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." 18

U.S.C. § 3632(d)(4)(emphasis added). As with all designations, any proposed transfer to a RRC or Home Confinement necessarily implicates section 3621(b), which authorizes "the Bureau of Prisons [to] designate the place of the prisoner's imprisonment." When exercising its discretion to determine where to house an inmate, the Bureau of Prisons considers, among other things, "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; [and] (3) the history and characteristics of the prisoner..." 18 U.S.C. § 3621(b). And of course, such a transfer also implicates section 3624(c), which states:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 .S.C. 3264(c)(1) (emphasis added).

### b. Application

Petitioner does not allege that the government is without authority to detain him. To the contrary, there is no dispute that Petitioner was convicted in a court of law and is incarcerated pursuant to a lawful sentence. Petitioner does not allege that BOP has miscalculated his sentence or disallowed Good Conduct Time in violation of due process, nor does he allege he has been denied early transfer to supervised release under the First Step Act. Instead, Petitioner challenges only the location BOP has designated for him to serve out the remainder of his sentence. This challenge does not impact Petitioner's release date in any way and is therefore not reviewable in habeas.

Petitioner relies on *Cervante v. United States*, 402 F. App'x 886, 887 (5th Cir. 2010) for the following proposition: "ineligibility for placement in… less restrictive confinement designed

to prepare a prisoner for reentry into society affect[s] the execution of his sentence" and "may be raised under § 2241." However, as the Respondent notes, the complete citation was as follows:

> Cervante's challenges to his inability to receive a one-year sentence reduction after completion of a drug treatment program and to his ineligibility for placement in a halfway house or other less restrictive confinement designed to prepare a prisoner for reentry into society affect the execution of his sentence. Thus, such claims may be raised under § 2241.

*Id*. (emphasis added). The *Cervante* court relied on a one-year sentence reduction to find jurisdiction and did not consider whether transfer to less restrictive confinement by itself would be cognizable under habeas. Ignoring the dicta, this unpublished decision was consistent with the principle that habeas jurisdiction attaches only where a favorable determination will automatically entitle the prisoner to accelerated release. *See Carson*, 112 F.3d at 820.4.

Due to Petitioner's status as a sex offender, Bureau of Prisons policy requires him to pass through an RRC on his way back into the community. *See* Program Statement 7320.01 at 7. Also due to his sex offender status, Tennessee state law precludes the RRC from accepting more than two sex offenders at any given time. Therefore, while Unit Team staff tried to give Petitioner the full benefit of credits earned, Residential Reentry Management staff was unable to schedule him for transfer until January 24, 2024, when the first available sex-offender bed will come open. *See* doc. 14, att. 12. Such an action is within BOP's discretion, and beyond judicial review. The decisions whether an inmate is eligible for a transfer to prerelease custody, and whether to assign an eligible inmate to an RRC or Home Case Confinement, are squarely within the discretion of the Bureau of Prisons, as outlined in section 3624(g), and are not subject to judicial review.

The Respondents argue, and the Court agrees, that there is no basis to review or overturn BOP's determination that Petitioner's remaining credits (those not applied to early release) should be applied to placement in an RRC rather than home confinement, or that he cannot be transferred

to an RRC until January 24, 2024. For these reasons, Petitioner's demand to be transferred to pre-release custody for any or all the remainder of his sentence must be dismissed for lack of jurisdiction.

### *3. The BOP has properly applied petitioner's Federal Time Credits.*

#### *a. Law*

The First Step Act (FSA) authorizes the Bureau of Prisons to grant Federal Time Credits (FTC or "FSA Time Credits") to eligible inmates. See 18 U.S.C. § 3624(g). However, FTC cannot be earned for programming completed prior to the enactment of the First Step Act on December 21, 2018: "A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed... prior to the date of enactment of this subchapter." 18 U.S.C. § 3632(d)(4)(B). "An eligible inmate… may earn FSA Time Credits for programming and activities in which he or she participated from December 21, 2018, until January 14, 2020," and "may earn FSA Time Credit if he or she is successfully participating in [Evidence-based Recidivism Reduction (EBRR)] programs or [Productive Activities (PAs)] that the Bureau has recommended based on the inmate's individualized risk and needs assessment on or after January 15, 2020." 28 C.F.R. § 523.42(b).

As a default, all inmates eligible to earn FTC are awarded 10 days for every 30 days of programming: "A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i). Some inmates may qualify to earn an additional five days per month:

> A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

Id. § 3632(d)(4)(A)(ii); see also 28 C.F.R. § 523.42(c).

> Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4)(C) (emphasis added).

While this language uses terms like shall, it is not absolute. Instead, the inmate may apply earned credits only if eligible to do so, as determined by the Bureau of Prisons. See 18 U.S.C. § 3624(g). If an inmate has earned credits equal to the remainder of the inmate's sentence, 18 U.S.C. § 3624(g)(1)(a), and otherwise meets the eligibility criteria laid out in 18 U.S.C. § 3624(g)(1), then the prisoner is eligible to have credits applied to prerelease custody and/or early transfer to supervised release. 18 U.S.C. § 3624(g)(2).

BOP is granted discretion to allocate these credits to either prerelease custody, or supervised release. See 18 U.S.C. § 3632(d)(4)(C). Congress defines prerelease custody as home confinement (HC) or placement in a residential reentry center ("RRC" or "halfway house"). 18 U.S.C. § 3624(g)(2). Although Congress has thus authorized the Bureau of Prisons to utilize either or both of these types of prerelease custody, it does not define when one should be used rather than the other, nor does it mandate the use of home confinement. Instead, this is left to the discretion of the Bureau of Prisons, and there is no statutory requirement that any inmate be designated to home confinement for any portion of his sentence. Notably, a transfer to prerelease custody does not terminate an inmate's confinement. Instead, this is merely a transfer to a lower level of confinement, as generally authorized by 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment…"). Ultimately, he must continue his pre-release custody until his sentence is satisfied.

Second, assuming an inmate has a term of supervised release as part of his sentence, the BOP may apply some of his Federal Time Credits to transfer (in effect release) the inmate to begin his term of supervised release up to twelve months early:

> If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section 3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632.

18 U.S.C. § 3624(g)(3); see also 28 C.F.R. § 523.44(d)(3) (stating that BOP may apply FSA Time Credits toward early transfer to supervised release "no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred."). Unlike prerelease custody, a transfer to begin supervised release is in effect an early release.

The Bureau of Prisons has exercised this discretion to apply the first 365 FSA Time Credits to early release (early transfer to supervised release). *See* Program Statement 5410.01, First Step Act of 2018 – Time Credits at 16 (for inmates meeting eligibility criteria, "up to 365 days of earned FTCs will be automatically applied to early release")(available at www.bop.gov). This maximizes the early release benefit to eligible inmates.

Any remaining credits may then be applied to pre-release custody. However, in order to apply such credits to prerelease custody, the "inmate must be eligible to participate in prerelease custody separate from any FSA eligibility criteria." *Id*. at 14. The Bureau of Prisons has longstanding policies regarding community confinement generally, (Program Statement 7320.04, Community Corrections Center (CCC) Utilization and Transfer Procedure), and home confinement specifically (Program Statement 7320.01, Home Confinement). Both are available at www.bop.gov. While some inmates may be appropriate for direct placement into home confinement, rather than first passing through an RRC, some inmates are not:

      a. Eligibility. Generally, an inmate may be considered eligible for direct placement on home confinement if he or she:

- **has no public safety factors**,
- had excellent institutional adjustment
- has a stable residence with a supportive family
- has confirmed employment (if employable), and # has little or no need for the services of a [RRC].

Program Statement 7320.01 at 7 (emphasis added). So, for example, an inmate with a Public Safety Factor of Sex Offender must pass through an RRC before any subsequent transfer to home confinement.

### b. Application

Petitioner's Projected Release Date (PRD), via Good Conduct Time (GCT) release, also known as his Statutory Release Date (SRD), without considering any Federal Time Credits (FTC or "FSA Time Credits") earned under the First Step Act (FSA), is on May 12, 2025. *See* doc. 14, att. 3, Public Information Inmate Data. Petitioner's January 19, 2023 FSA Time Credit Assessment indicated that he started earning Time Credits on December 21, 2018, earning at a rate of 10 days per month from December 21, 2018, through December 5, 2021. *See* doc. 14, att. 4, FSA Time Credit Assessment. At that point, BOP increased his earning rate to 15 days per month, and he has earned at that rate since then. On March 25, 2023, the Bureau of Prisons recalculated Petitioner's time credits. *See* doc. 22. This updated FSA Time Credit Assessment now reflects that he has earned a total of 735 FSA Time Credits. *See* doc. 22, att. 1, FSA Time Credit Assessment dated March 25, 2023. This includes 60 credits that were earned at a rate of 10 credits per month from December 21, 2018 through July 17, 2019. He then earned an additional 675 credits, at a rate of 15 credits per month, from July 17, 2019, through March 28, 2023. This gives Fox the benefit of the presumption that he would have scored as Minimum Risk at his FSA Assessment on January 18, 2019 (28 days following the passage of the FSA), and again at his next

scheduled assessment six months later on July 17, 2019. Indeed, this presumption results in a calculation that is more generous than that advocated for by Petitioner. *See* Doc. 17 at p. 9 (advocating for 655 credits based on 1493 programming days).

Furthermore, whether Petitioner should have earned more credits than the 735 credits BOP records now show he has accrued is irrelevant, as 735 credits already equals or exceeds the remainder of his sentence. After subtracting the 365 days that were applied to reduce his sentence, this leaves 370 days to be applied to community confinement. With his projected release date of May 12, 2024, it is undisputed that Petitioner has earned enough credits to have them applied under 18 U.S.C. § 3624(g)(1)(A) (an inmate is not eligible to apply earned credits until he has earned credits "in an amount that is equal to the remainder of the prisoner's-imposed term of imprisonment").

Therefore, at this point there is no dispute as to the duration of his remaining confinement. Instead, this only issue before the Court is *where* Petitioner should serve out the remainder of his sentence, specifically whether BOP should be ordered to transfer Petitioner to prerelease custody, which would consist of either placement in an RRC, or in HC.

The Respondents note that an important factor in this case is Petitioner's status as a sex offender and that he has a PSF of "Sex Offender." *See* doc. 14, att. 5, Security/Designation Data. Because of this, Petitioner cannot be referred directly to home confinement. *See* discussion *supra*. In order to give effect to Petitioner's projected credits, his Unit Team submitted a request recommending placement in an RRC for up to 365 days. *See* Petition, doc. 6, at p. 9; *see also* doc. 14, att. 13, RRC Referral. A placement of 365 days would have given him full benefit of all earned FTC. Unfortunately, the Bureau of Prisons was unable to secure a bed for him at the RRC for a full 365 days. As Congress recognized in 18 U.S.C. § 3621(b), some of the factors that go into

such a designation are: "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; [and] (3) the history and characteristics of the prisoner." The available RRC resources for Petitioner are limited in Tennessee due to his status as a sex offender. Specifically, the state of Tennessee makes it illegal for the RRC to house more than two sex offenders at a time. See Tenn. Code Ann. § 40-39-211(h)(2)(A). This being the case, the first available bed for Petitioner will be on January 24, 2024. *See* doc. 14, att. 12, Declaration of Stacy Rimmer, U.S. Department of Justice Sector Administrator, Residential Reentry Management Branch. The Respondents have represented to the Court that Fox will accordingly be transferred there at the earliest opportunity, considering his specific circumstances, and limitations on resources due to applicable state law. *See* doc. 14, att. 1, p. 16.

### III.
#### CONCLUSION

Fox fails to state a claim for relief under 28 U.S.C. § 2241. Accordingly,

**IT IS RECOMMENDED** that the petition be **DENIED** and **DISMISSED WITH PREJUDICE** under Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 7th day of November, 2023.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE